FILED
2013 Oct-30  AM 10:27
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| CHARLES D. PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 6:12-cv-02757-LSC |
| | ) | |
| NATIONAL UNION FIRE | ) | |
| INSURANCE COMPANY OF | ) | |
| PITTSBURGH, PA., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

Plaintiff Charles D. Phillips ("Phillips" or "Plaintiff") brought this action claiming that Defendant National Union Fire Insurance Company ("NUFIC") breached an insurance contract between the parties and, further, that NUFIC acted in bad faith.  Before the Court is Phillips's motion for summary judgment on the breach of contract claim, as well as NUFIC's motion for summary judgment on both claims. For the reasons stated below, both motions for summary judgment on the breach of contract claim are due to be DENIED. NUFIC's motion for summary judgment on the abnormal bad faith claim is due to be DENIED. NUFIC's motion for summary judgment on the normal bad faith claim is due to be GRANTED.

I. Factual Background[1]

Plaintiff Charles Phillips worked as a truck driver for many years. For much of his career, he was an owner-operator who owned his equipment and leased it to trucking companies that assigned him loads. Most recently, he leased a 1985 Freightliner tractor and two trailers to Southeast Logistics. Phillips used this equipment primarily to haul loads from a shipper called Tubular Products in Pinson Valley, Alabama. Occasionally, he picked up loads from other locations or for other shippers.

Phillips usually received his dispatch instructions directly from Tubular Products rather than from Southeast Logistics. The Shipping Manager at Tubular Products called him each day at approximately 3:00 p.m. to tell him when and where he would load and unload the following day. According to Plaintiff, he did not work a set schedule; there were days when no loads were available and days when he would haul loads for other customers. NUFIC states that Plaintiff essentially worked a standard five-day work week for Tubular Products.

In addition to his tractor and trailers, Phillips also owned a 1992 GMC Sierra,

---

[1] Because there are cross-motions for summary judgment, the Court takes care to note the differences in each side's view of the facts where they exist. Each summary judgment motion must be evaluated independently, with the facts read in the light most favorable to the non-moving party. *Griffis v. Delta Family-Care Disability*, 723 F. 2d 822, 823-24 (11th Cir. 1984).

which he claims was operated solely as a work truck. Phillips states that he kept oil and tools for working on his tractor in the GMC. He also kept his trucking paperwork in the GMC and often drove it to turn in paperwork or pick up his paycheck at the Birmingham office of Southeast Logistics. Plaintiff owned another pickup truck that he used for personal purposes. NUFIC claims that the GMC cannot be a work truck because it was not used to haul loads, and that Plaintiff used it to drive "back and forth to work" at Tubular Products. (Doc. 18 at 1.)

For several years prior to the accident at the center of this litigation, Phillips usually kept his tractor and trailers parked at Tubular Products as a way to save on diesel fuel. On February 16, 2009, the Shipping Manager at Tubular Products called Phillips and informed him of a load that needed to leave Tubular Products at 8:00 a.m. the next day. The next morning, Plaintiff traveled in his GMC from his home in Cordova, Alabama, to the location of his tractor and trailer at Tubular Products. While Plaintiff characterizes his trip as "en route to pick up a load" (Doc. 11 at 5), Defendant contends that Plaintiff "was on his way to pick up his tractor, which he would then use to pick up a load." (Doc. 18 at 2.)

In any case, Phillips never made it to Tubular Products that morning because he was struck head on by another driver. In the accident, he broke his hand in several places and suffered a fracture of his neck. Phillips has been unable to work as a truck

driver since the accident.

When he leased his equipment to Southeast Logistics, Plaintiff purchased an insurance policy known as "Trucker's Occupational Accident Insurance" from the Defendant. This policy included coverage for temporary and continuous disability benefits "if injury to the insured person" results in either temporary or permanent disability. "Injury" is a defined term in the policy:

> Injury means bodily injury to an Insured Person caused by an Occupational accident while coverage is in force under this policy, which results directly from and independently of all other causes in a Covered Loss. All injuries sustained by an Insured Person in any one accident shall be considered a single Injury.

(Doc. 1 at 35.) Two other terms defined in the policy are central to this case. First, Occupational is defined as follows:

> Occupational means, with respect to an activity, accident, incident, circumstance or condition involving an Insured, that the activity, accident, incident, circumstance, or condition occurs or arises out of or in the course of the Insured performing services within the course and scope of contractual obligations for the Policyholder, while under Dispatch. Occupational does not encompass any period of time during the course of everyday travel to and from work.

*Id.* Secondly, Dispatch is also a defined term:

> Dispatch means the period of time during which an Insured operates his or her vehicle, while being en route to pick up a load, picking up a load, en route to deliver a load, and unloading a load.

*Id.* The Court notes that "vehicle," as used in the definition of "Dispatch," and "work," as used in the definition of "Occupational," are not defined in the policy.

After his accident, Phillips submitted a claim under this policy, and NUFIC originally approved it, paying temporary disability benefits to Phillips for more than one year. During this time NUFIC sent Phillips to at least two "Independent Medical Examinations" to assess his level of disability and determine whether he was entitled to benefits. (Doc. 13 at 8.) It also obtained a statement from Plaintiff about the accident.[2]

On October 4, 2010, NUFIC informed Plaintiff that he was not entitled to Occupational Accident Benefits, including both the temporary disability benefits it had already paid Phillips and the continuous disability benefits Phillips sought. Plaintiff brought this suit alleging that this denial breached the contract. He also alleges that NUFIC committed bad faith in its refusal to pay benefits.

II. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[2]   This statement or report is the subject of much disagreement between the parties, as well as Plaintiff's motion to strike it as evidentiary material. The Court will address Plaintiff's motion to strike below.

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d

1428, 1437 (11th Cir. 1991)).

The fact that there are cross-motions for summary judgment in this particular case does not change the standard. Even though both sides allege that no genuine issue of material fact exists, the Court must still evaluate each motion under the Rule 56 standard, determining whether either party has established that it is entitled to judgment as a matter of law. *See Griffis v. Delta Family-Care Disability,* 723 F.2d 822, 824 (11th Cir. 1984). The Court has considered each motion in the light most favorable to the opposing party in order to determine whether the Rule 56 standard has been met. *See Mize*, 93 F.3d. at 742.

## III. Discussion

### A. Plaintiff's Motion to Strike Defendant's Investigative Report

Plaintiff moves to strike an investigation report prepared from a NUFIC employee's interview with Phillips. The report consists of an employee's summary of the interview, and Plaintiff contends that it is inadmissible "double hearsay." (Doc. 15.) Under the Federal Rules of Evidence, an out of court statement offered for the truth of the matter asserted is hearsay, and hearsay cannot be admissible unless another rule or federal statute deems it so. Fed. R. Evid. 801; 802. Evidence that is not offered for the truth of the matter asserted can never be hearsay. Fed. R. Evid. 801.

The report clearly constitutes an out of court statement. In Defendant's

response to the motion to strike, it concedes that the report is not offered at this time as evidence of the truth of the assertions therein. (Doc. 21.) Thus the Court need not address whether any hearsay exception in the rules would allow it be admitted for that purpose. However, the report can serve as admissible non-hearsay evidence that an investigation was conducted, which is relevant to Plaintiff's bad faith claims. Therefore, the Court will not consider the substance of the report with respect to the breach of contract claim, but the existence of the report remains viable evidence of an investigation with respect to the bad faith claims.

B. The Breach of Contract Claim

Alabama law governs this diversity action, and the Court must determine the questions before it according to how it believes the Alabama Supreme Court would rule. *See Martin v. Travelers Indem. Co.*, 450 F. 2d 542, 546 (5th Cir. 1971). A breach of contract action has the same basic elements when the contract is one for insurance: the Plaintiff must show "1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *State Farm Fire & Cas. Co. v. Slade* 747 So. 2d 293, 303 (Ala. 1999) (quoting *Southern Medical Health Systems, Inc. v. Vaughn*, 559 So. 2d 98, 99 (Ala. 1995)).

Here, the parties had a valid insurance contract, and NUFIC does not dispute

that Phillips paid his premiums under that contract. The question is whether the defendant failed to perform under the contract. Defendant alleges that the plain meaning of the contract did not obligate it to perform. In determining the meaning of an insurance contract, the Alabama Supreme Court has repeatedly held that such contracts are to be strictly construed against the insurer. *See e.g., Roberts v. Am. Nat. Prop. & Cas. Co.*, 976 So. 2d 1005, 1007 (Ala. 2007). Any ambiguous provisions in the policy are "construed most strongly against the insurer and in favor of the insured." *Id.* (quoting *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 695 (Ala. 2001)).

The ambiguity (or lack thereof) of an insurance provision is a question of law that must be decided by the Court. *Slade*, 747 So. 2d at 308. In determining whether there is ambiguity in the terms, the Court asks not what the insurer intended them to mean but how a reasonably prudent buyer of insurance would interpret them. *Nationwide Ins. Co. v. Rhodes,* 870 So. 2d 695, 697 (Ala. 2003). From this perspective, contract terms are ambiguous only if they are "reasonably susceptible to two or more constructions or there is reasonable doubt or confusion as to their meaning." *Slade*, 747 So. 2d at 308-309. In interpreting the language of any contract, Alabama law strictly applies the plain meaning rule; contract terms should be given their "clear and plain meaning" and "the parties are presumed to have intended what the terms clearly

state." *State v. Lorillard Tobacco Co.*, 1 So. 3d 1, 7 (Ala. 2008) (quoting *H & S Homes, LLC v. Shaner*, 940 So. 2d 981, 988 (Ala. 2006)). In the present case, both parties argue that the plain meaning of the policy favors their position, but this does not automatically mean the policy is ambiguous. *Watkins v. United States Fid. & Guar. Co.*, 656 SO. 3d 337, 339 (Ala. 1994) ("the fact that the parties interpret the provisions of an insurance contract differently does not necessarily mean the contract is ambiguous").

NUFIC's failure to define two words used in the definitions section of its policy leads this Court to determine that the policy is ambiguous as to the terms "Dispatch" and "Occupational." First, the policy definition of "Occupational" excludes "everyday travel to and from work," but it fails to define the term "work." There are multiple potential locations that could be Plaintiff's place of work. First, he could be deemed to work at Southeast Logistics, the entity to which he had leased his tractor and trailers and from which he received his pay. Plaintiff had to visit the Southeast Logistics office in Birmingham on a regular basis to turn in paperwork and be paid. Secondly, Plaintiff's place of work could be Tubular Products, where he normally picked up loads and from which he usually received his dispatch instructions. (On rare occasions, Plaintiff received dispatch instructions from Southeast Logistics.)

Plaintiff's place of work at any particular time could also be the current location

of the vehicle he used for work. In some ways this construction makes sense. The problem with defining "work" as Plaintiff's "vehicle," however, is that the policy does not define "vehicle." Plaintiff claims that he owns more than one vehicle that he used solely for work, including the GMC that he was driving at the time of the accident. NUFIC seeks to define "vehicle" either according to the lease agreement between Phillips and Southeast Logistics or as a vehicle capable of hauling the loads that are assigned to the insured. However, the insurance policy mentions the lease agreement only in defining the personal eligibility of the insured and never mentions the tractor or trailers involved in the lease agreement.

The plain meaning of the term "vehicle" favors the Plaintiff's reading because the GMC, is, in fact, a vehicle. Plaintiff used this vehicle for work purposes by keeping tools and fluids in it for working on his Freightliner and by using it to travel to locations such as the Southeast Logistics office. He could have driven his Freightliner on all of these occasions, but it was to the benefit not only of himself, but also to Tubular Products and Southeast Logistics that he not do so. A reasonably prudent buyer of insurance could believe that the policy covered him when he was responding to dispatch instructions in a vehicle that he used solely for work.

The definition of "Occupational" in the policy requires the insured to be performing services for Southeast Logistics and to be under dispatch. If Phillips really

uses the GMC only in performing services for Southeast Logistics, and if, as is undisputed, he had received dispatch instructions to report to Tubular Products at a certain time on the morning of the accident, these aspects of the definition of "occupational" could be satisfied. Because the term "work" is not defined, reasonable minds may differ on whether the final sentence of the definition of "occupational" applies, excluding "everyday travel to an from work." Therefore, the Court finds that "Occupational" is an ambiguous term in the contract because it is "reasonably susceptible to two or more constructions . . . ." *Slade*, 747 So. 2d at 308-309.

The policy definition of "Dispatch" is likewise ambiguous because the policy does not define the word "vehicle." A driver is under dispatch when he is operating his vehicle en route to pick up a load or is picking up, transporting, or delivering that load. Because "vehicle" is undefined, a prudent buyer of insurance could believe that he was en route to a pick up a load in the circumstances Phillips was in on the date of the accident. NUFIC argues that Plaintiff was actually en route to pick up the vehicle in which he would pick up the load, but its failure to define "vehicle" in the policy it drafted renders the term ambiguous. NUFIC could easily have limited the policy to cover insured persons only while they were driving, loading, unloading, or repairing the equipment leased to Southeast Logistics. It could also have inserted a definition of "vehicle" that either limited the policy to tractor-trailers or to vehicles capable of

hauling the loads assigned by Southeast Logistics.

The Court believes that NUFIC intended the policy to cover only those injuries suffered while plaintiff was driving his Freightliner while under dispatch. It created the policy for truck drivers and included "Truckers" in the title. Alabama law, however, makes it clear that this Court should not interpret the policy according to what the insurance company intended. *Rhodes* 870 So. 2d at 697; *see also Am. Res. Ins. Co. v. H & H Stephens Const., Inc.*, 939 So. 2d 868 (Ala. 2006). Rather, the Court must interpret the terms as a reasonably prudent buyer of insurance would, and must also construe them against the insurance company. *Rhodes*, 870 So. 2d at 697; *Roberts*, 976 So. 2d at 1007. Because the Court believes that a reasonably prudent buyer of insurance, and thus a reasonable juror, could interpret the policy in favor of either party in this case, summary judgment is not appropriate. Therefore, both parties motions for summary judgment on the breach of contract claim are due to be denied.

C. The Normal Bad Faith Claim

Alabama law recognizes two types of bad faith claim against insurers. Plaintiff brings both "normal" and "abnormal" bad faith claims. "In the normal bad-faith case, the plaintiff must show the absence of any reasonably legitimate or arguable reason for denial of a claim." *Jones v. Alfa Mut. Ins.* Co., 1 So. 3d 23, 32-33 (Ala. 2008) (quoting *Slade*, 747 So. 2d at 306). "For a 'normal' bad-faith claim to be submitted to the jury,

the underlying contract claim must be so strong that the plaintiff would be entitled to a preverdict judgment as a matter of law." *Id.* at 32 (quoting *Shelter Mut. Ins. Co. v. Barton*, 822 So. 2d 1149, 1155 (Ala. 2001)).

The Court has already found that the insurance contract in this case could reasonably be interpreted to deny coverage. Therefore, the Plaintiff would not be entitled to a preverdict judgment as a matter of law on the breach of contract claim. Without a showing that he is entitled to such a judgment, Plaintiff cannot present his normal bad faith claim to the jury. *Barton*, 822 So. 2d at 1155. Thus, Defendant's motion for summary judgment on the normal bad faith claim is due to be granted.

D. The Abnormal Bad Faith Claim

An abnormal bad faith claim can proceed to the jury without the requirement of a preverdict judgment as a matter of law. *White v. State Farm Fire & Cas. Co.*, 953 So. 2d 340, 348 (Ala. 2006). A plaintiff can survive summary judgment on an abnormal bad faith claim if he produces "substantial evidence showing that the insurer (1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying the plaintiff's claim; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim." *Slade*, 747 So. 2d at 306-07.

Plaintiff does not allege that NUFIC failed to investigate the claim, making this case different from most of the abnormal bad faith claims brought before Alabama courts. *See, e.g., State Farm Fire and Cas. Co. v. Brechbill*, ---- So. 3d ----, 2013 WL 5394444 (Ala. Sept. 27, 2013). Here, the only question is whether NUFIC "relied on an ambiguous portion of the policy . . . to deny the plaintiff's claim." *Slade*, 747 So. 2d at 306-07. Alabama courts have repeatedly stressed that insurers may not rely on an ambiguous policy term to deny coverage. *See e.g., Blackburn v. Fid. & Deposity Co.*, 667 So. 2d 661, 669 (Ala. 1995); *Employees' Benefit Ass'n v. Grissett*, 732 So. 2d 968, 976-77 (Ala. 1998). The oft-cited reason for this rule is that "if an insurer's subjective interpretation of an insurance policy could create the fairly debatable reason needed to defend a bad faith claim, then insurers would be encouraged to write ambiguous insurance policies." *Blackburn*, 667 So. 2d at 669.

The absence of a reasonable or debatable reason for denial of coverage remains an element of the tort of bad faith even in the abnormal case. *Brechbill*, 2013 WL at *9. However, an insurer cannot rely on an ambiguous policy term to negate this element. *Grissett*, 732 So. 2d at 977 ("The absence of a debatable reason not to pay a claim cannot be grounded on the vagaries of construction of an ambiguity"). An insurer cannot claim that an ambiguity gives it a debatable reason to deny coverage, because the law makes clear that an ambiguous term must be construed against it. *Twin City*,

817 So. 2d at 695 ("Ambiguous provisions of an insurance policy will be construed most strongly against the insurer and in favor of the insured"). Because this Court found the term "under dispatch" ambiguous, Alabama law requires the abnormal bad faith claim to go to the jury. Summary judgment is due to be denied.

## IV. Conclusion

Both parties' motions for summary judgment on Plaintiff's breach of contract claim are due to be denied, as is Defendant's motion for summary judgment on Plaintiff's abnormal bad faith claim. Defendant's motion for summary judgment on Plaintiff's normal bad faith claim is due to be granted. A separate order reflecting this opinion will be entered.

Done this 30th day of October 2013.

L. SCOTT COOGLER

UNITED STATES DISTRICT JUDGE

174310